949 So.2d 570 (2007)
STATE of Louisiana, Appellee,
v.
Nicky Lavelle COLEMAN, Appellant.
No. 41,764-KA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
*571 Christopher A. Aberle, Louisiana Appellate Project, for Appellant.
*572 Jerry L. Jones, District Attorney, John T. Pham, R. Nicolas Anderson, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and MOORE, JJ.
GASKINS, J.
The defendant, Nicky Lavelle Coleman, was convicted of distribution of cocaine. He was adjudicated a second felony offender and sentenced to 15 years at hard labor without benefit of parole, probation or suspension of sentence. We affirm the defendant's conviction; we amend and, as amended, affirm his sentence.

FACTS
On January 18, 2005, a "buy/bust" operation was conducted by Lieutenant Mike Rowlan and Sergeant Jay Ellerman of the Ouachita Parish Sheriff's Office. They equipped an informant with an audio recording device and $60 in photocopied buy money. They then followed the informant in a surveillance vehicle which was equipped with a video camera. The defendant met the informant at the intersection of 11th and Adams Street in Monroe. The defendant sold $60 worth of cocaine to the informant as the deputies watched and recorded the conversation from about two blocks away. The defendant was immediately arrested.
The defendant was charged with distribution of cocaine. Following a jury trial, he was convicted as charged. The state filed a multiple offender bill in which it alleged that the defendant was a fourth felony offender. Pursuant to a plea bargain, the defendant entered a plea of guilty to being a second felony offender. He was sentenced to 15 years at hard labor without benefit of parole, probation or suspension of sentence. His motion for reconsideration was denied.
The defendant appeals.

BATSON CHALLENGE
In his only assignment of error, the defendant contends that the trial court erred in denying his Batson challenge to the state's use of a peremptory challenge against Betty Hutson, a black prospective juror. He alleged that he carried his burden of demonstrating the state's purposeful discrimination in its use of peremptory challenges.
Of nine prospective African-American jurors not challenged for cause, the state accepted three and used peremptory challenges to strike six. (The defense used a peremptory challenge to excuse one of the three African-Americans that the state was willing to accept.) Ultimately, the 12-person jury included two African-Americans, and a third served as an alternate. Following voir dire, the defense raised a Batson objection, claiming the State used its peremptory challenges to strike potential jurors based solely upon the fact they were African-American. The trial judge denied the defense's Batson objection.

Law
The U.S. Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race. The three-step Batson process was recently described in Rice v. Collins, 546 U.S. 333, ___-___, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006), as follows:
A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor *573 exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. [Internal quotations and citations omitted.]
Louisiana has codified the ruling in Batson in La. C. Cr. P. art. 795.[1]
The race-neutral explanation offered by the state in the second step must be one which is clear, reasonable, specific, legitimate and related to the particular case at bar. State v. Collier, 553 So.2d 815, 820 (La.1989); State v. Wilson, 40,767 (La.App.2d Cir.8/23/06), 938 So.2d 1111. The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995)(per curiam); Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).
A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez, 500 U.S. at 364, 111 S.Ct. at 1868-69; Batson, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724; State v. Elie, XXXX-XXXX (La.7/10/06), 936 So.2d 791; State v. Wilson, supra. The trial court is in a position to observe firsthand the demeanor of the attorneys and the venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, cert. denied, ___ U.S. ___, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006); State v. Lawrence, 40,278 (La.App.2d Cir.3/15/06), 925 So.2d 727; State v. Jones, *574 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61.
A single strike based upon race supports a Batson claim and requires reversal no matter how ably the state has defended the other strikes. Batson, 476 U.S. at 95, 106 S.Ct. at 1722; State v. Elie, supra; State v. Wilson, supra.

Discussion
As to the first step of the Batson analysis, the trial court did not expressly rule on whether the defendant made out a prima facie case of purposeful discrimination; instead the court moved directly to the second step by ordering the prosecutor to give, for the record, its race-neutral reasons for the use of its peremptory strikes against black prospective jurors. It has been held that a trial court's demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272. In any case, once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. Hernandez, supra, 500 U.S. at 359, 111 S.Ct. at 1866; State v. Green, 655 So.2d at 288.
Of nine black prospective jurors, the state accepted three and excused six; one of the three accepted by the state was excused by the defense. The trial court required the state to give its reasons for excusing the six black prospective jurors.[2] The reasons for the dismissal of five of these prospective jurors were as follows: (1) a female had previously served on a criminal jury that acquitted; (2) a female had previously served on an acquitting jury and was a former client of defense counsel; (3) a female had a criminal conviction; (4) a male had a domestic abuse charge; and (5) a male gave answers about the use of informants and the burden of proof which led the state to unsuccessfully challenge him for cause.
The sixth black prospective juror, Betty Hutson, was dismissed for her "very quick answer" to a hypothetical question posed by defense counsel about an innocent person being wrongfully convicted. The question asked whether the jurors believed that a defendant charged with driving while under the influence could be found guilty by a jury when the evidence only established that the defendant was intoxicated while standing near his vehicle with his keys in his hand. When asked if she believed that could happen, Ms. Hutson stated conclusively, "Yes, sir. It can." The state expressed concern that she appeared open to the belief that, despite a standard of guilt beyond a reasonable doubt, she could be placed in the position of convicting an innocent person. The state also noted Ms. Hutson's demeanor, the speed with which she answered the question, and her failure to ponder it for very long. As to other prospective jurors who gave similar answers, the prosecutor stated that they gave him less concern because of their consideration of their answers or reference to other evidence.
The defendant argues that the answers of white prospective jurors Christina Steward, James Gilbert, and Amy Sittner were comparable to those of Ms. Hutson, yet the state did not excuse them. We note that *575 Mr. Gilbert was released by the court due to a family medical emergency; consequently, the defense cannot credibly rely on the fact that the state did not exercise a peremptory strike against him when it had no such opportunity. When asked the same question as Ms. Hutson about an innocent person being convicted, Ms. Steward stated that she "believe[d]" it could happen. She also stated that she would want proof and that she would go with the judge's instructions. When it was her turn, Ms. Sittner stated, "If he wasn't driving, I don't believe that he would be convicted of driving while intoxicated." Only upon further questioning was Ms. Sittner willing to admit that some people convicted of crimes have later been exonerated by scientific developments which aid in the analysis of the evidence.
On its face, therefore, the record does give support to the prosecutor's belief that Ms. Hutson was more predisposed to believing that innocent people are often convicted of crimes. While Ms. Steward qualified her affirmative response by indicating that it was her belief that it could happen, Ms. Hutson unequivocally stated that "It can." Ms. Sittner was even more reluctant than Ms. Steward to acknowledge the possibility when she initially indicated that if the evidence did not bear out guilt, she did not believe a defendant would be convicted.
While these are not startling distinctions, they are also to be considered in light of the fact that this court does not have the benefit of witnessing the prospective juror's demeanor during voir dire. Furthermore, the question before the trial court was not whether Ms. Hutson was more predisposed to such a belief. The question before the court was whether the belief that she might be constituted the actual reason for the state's exercise of its strike, rather than simply being a pretext for striking her on the basis of her race. The finding of an absence of discriminatory intent under the third step of Batson is based upon whether the trial court found the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor, by how reasonable  or how improbable  the explanations are, and by whether the proffered rationale has some basis in accepted trial strategy. Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. State v. Qualls, 40,630 (La.App.2d Cir.1/27/06), 921 So.2d 226.
Because the trial judge was in the best position to determine the prosecutor's sincerity in his reasons for challenging Ms. Hutson, it would be difficult to conclude from this record that the trial court abused its discretion in determining that the prosecution's explanations were race-neutral and that the defendant failed to make a showing of purposeful discrimination.
This assignment is without merit.

ERROR PATENT

Parole eligibility
The trial court imposed the defendant's entire sentence without benefit of "parole, probation or suspension of sentence." However, the defendant was sentenced as a second felony offender under La. R.S. 15:529.1. Under La. R.S. 15:529.1(G), such a sentence is to be imposed "without benefit of probation or suspension of sentence." Additional restrictions may be imposed on the sentence provided those additional restrictions are provided in the underlying offense of conviction. State v. Hunter, 33,066 (La. *576 App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, and 2001-2087 (La.4/19/02), 813 So.2d 424. La. R.S. 40:967(B)(4)(b), which pertains to distribution of cocaine, provides for a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence. Thus, after adjudicating the defender a second felony offender, the trial court was required to impose only two years of the 15-year sentence without benefit of parole. Accordingly, we amend the defendant's sentence to provide that only the first two years are to be served without benefit of parole, probation or suspension of sentence; the rest of the sentence is to be served without benefit of probation or suspension of sentence. The trial court is directed to make an entry in the minutes reflecting this change.

Post-conviction relief
The trial court failed to advise the defendant at sentencing that he has two years from the time his conviction and sentence are final to seek post-conviction relief as required by La. C. Cr. P. art. 930.8. The statute contains supplicatory language which does not bestow an enforceable right on an individual defendant. State v. Hunter, 36,692 (La.App.2d Cir.12/20/02), 834 So.2d 6. Furthermore, this defect has no bearing on whether the sentence is excessive and, thus, is not grounds to reverse the sentence or to remand the case for resentencing. State v. Ferrell, 26,649 (La.App.2d Cir.12/7/94), 647 So.2d 427. We now advise the defendant by this opinion that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C. Cr. P. arts. 914 or 922.

CONCLUSION
The defendant's conviction is affirmed. His sentence is amended to provide that only the first two years be served without benefit of parole, probation or suspension of sentence while the rest of the sentence is to be served without benefit of probation or suspension of sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] La. C. Cr. P. art. 795 provides, in pertinent part:

C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
[2] The state exercised eight of its 12 peremptory challenges; two of them were used against white prospective jurors. The defense peremptorily challenged 12 prospective jurors, one of whom was black and 11 of whom were white.