968 So.2d 1247 (2007)
STATE of Louisiana, Appellee
v.
David D. JONES, Appellant.
No. 42,531-KA.
Court of Appeal of Louisiana, Second Circuit.
November 7, 2007.
*1249 Laura M. Pavy, for Appellant.
Walter E. May, Jr., District Attorney, Kenneth P. Haines, Tammy L. Gantt Jump, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, J.
The defendant, David D. Jones, was charged by bill of information with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, and attempted simple escape, a violation of LSA-R.S. 14:110(A) and LSA-R.S. 14:27. The charges were severed and defendant was tried separately on the charge of possession of a firearm by a convicted felon. After a jury trial, the defendant was found guilty as charged. Defendant's motions for new trial and for post verdict judgment of acquittal were denied. The trial court sentenced the defendant to serve 10 years at hard labor without the benefit of parole, probation or suspension of sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
In January 2004, the defendant was charged by bill of information with possession of a firearm by a convicted felon and attempted simple escape. Previously, in May 2003, defendant had pled guilty to conspiracy to distribute cocaine and had been on supervised probation until his arrest for possession of the firearm. Defendant's probation was thereafter revoked.
During jury selection in this case, the state exercised its six peremptory challenges to exclude black jurors. The defendant objected to the state's exercise of its peremptory challenges under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court found a pattern of strikes against black jurors and required the state to articulate race-neutral reasons for each of the challenges. Of the six peremptory challenges by the state, the defendant complains on appeal about the trial court's ruling concerning the prospective jurors Jacqueline Williams and John Wayne Bradley.
Williams was an employee of America First Insurance Company and resided in Quitman. She stated that her husband, Gerald Williams, was employed at Louisiana Tech University. Bradley was an employee at Smurfit Stone Container and resided in Jonesboro. Bradley stated he was a divorced father of six children and a gun owner. Neither Williams nor Bradley responded when the prosecutor asked prospective jurors if they or any of their relatives had been prosecuted by the district attorney's office.
For these two jurors, the state proffered the following reasons for peremptorily challenging them:
Jacqueline Williams: The prosecutor asked that Williams be excused because she failed to acknowledge, in response to two questions directed to the panel, that *1250 her husband had been previously arrested and prosecuted for flight from an officer in Bienville Parish in 2000. According to the prosecutor, Williams' husband, Gerald, had the same name and same address as the "Gerald Williams" who had been prosecuted for flight from an officer by the Bienville Parish District Attorney's office.
John Wayne Bradley: The prosecutor asked that Bradley be excused for three reasons: (1) he acknowledged that he was a gun owner, but did not acknowledge whether he agreed or not with the statement that one can have the right to bear arms taken away when one commits certain crimes; (2) he failed to acknowledge, in response to a question directed to the panel, that his son was being prosecuted for issuing worthless checks (according to the prosecutor, her office had an outstanding bench warrant for a "John Wayne Bradley, Jr.," whom she believed was the juror's son. However, there was nothing in the record indicating the names of Mr. Bradley's six children); and (3) he failed to acknowledge his own pending "non-support cases" with the district attorney's office.
Throughout the state's explanations, the defense objected to the prosecutor's references to information outside of that developed in voir dire.
As to Williams, the trial court accepted the state's explanation as race-neutral only after the prosecutor represented that the "Gerald Williams" her office had prosecuted was a person with the same name and address as Williams' husband. The prosecutor contended that it did not matter whether Williams was aware of her husband's prior prosecution, since she could still be biased if she were to learn of her husband's prior arrest during the trial.
Regarding Bradley, the trial court expressed concern about whether Bradley was aware that his son was being prosecuted or whether "John Wayne Bradley, Jr." was even Bradley's son. The prosecutor stated that her primary reason for challenging Bradley was the way he answered (or failed to answer) a question about taking away the right to bear arms upon commission of certain crimes. The court accepted the prosecutor's concern over Bradley's perceived problem with restricting gun ownership as a race-neutral explanation for the challenge.
The jury was ultimately comprised of ten white jurors and two black jurors. At the conclusion of the trial, the jury found the defendant guilty as charged. Subsequently, defendant filed a timely motion for new trial, based mainly on the court's denial of his Batson challenges, and a motion for post verdict judgment of acquittal. The trial court denied these motions and sentenced defendant to serve 10 years at hard labor without benefit of parole, probation or suspension of sentence, consecutive to any sentence imposed for his probation violation.

DISCUSSION
The defendant contends the trial court erred in denying his motion for new trial alleging improper selection of the jury. Defendant argues that the state's proffered explanations for the peremptory challenges were not supported by the record developed during voir dire, because the rationale in each instance was based on information known only to the state without any showing that the jurors were even aware of the information.
The United States Supreme Court has held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race. The three-step *1251 Batson process was recently described in Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), as follows:
A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.
[Internal quotations and citations omitted.]
The race-neutral explanation offered by the state must be one which is clear, reasonable, specific, legitimate, and related to the particular case at bar. State v. Collier, 553 So.2d 815 (La.1989); State v. Coleman, 41,764 (La.App.2d Cir.1/24/07), 949 So.2d 570. The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
Louisiana has codified the Batson ruling in LSA-C.Cr.P. art. 795, which provides in pertinent part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
A reviewing court owes the district court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez, supra; Batson, supra; State v. Elie, XXXX-XXXX (La.7/10/06), 936 So.2d *1252 791; State v. Coleman, supra. The district court is in a position to observe firsthand the demeanor of the attorneys and the venire members, the nuances of the questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006); State v. Coleman, supra; State v. Jones, 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61.
In the present case, prospective juror Williams was challenged based on the prosecutor's personal knowledge concerning the prior prosecution of Williams' husband by the Bienville Parish District Attorney's office. It is undisputed that this specific information was not developed during the voir dire examination. However, the record shows the name of Williams' husband and their residential address.
In State v. Jones, supra, this court held that when a peremptory challenge is premised on information gained from outside sources, the trial court should exercise caution to ensure that the challenge based on such outside information is credible and supported by on-the-record factual findings to this effect and that a complete record is made on this issue. This court also cited decisions from other states, which held that the prosecutor may establish race-neutral reasons on the basis of the prosecutor's own personal knowledge or recollections of prior criminal activity.
Prospective jurors who have family members with criminal records or potential ill will toward police may be peremptorily challenged. State v. Anderson, 34,670 (La.App.2d Cir.5/9/01), 786 So.2d 917. Here, the prosecutor explained to the trial court that her office had prosecuted a "Gerald Williams" having the same residential address as Williams' husband. This information was within the prosecutor's personal knowledge and was deemed credible by the trial court. There is nothing in the record showing that the state treated similarly-situated white prospective jurors more favorably (i.e., no challenge). Based upon this record, we cannot say the trial court was clearly wrong in finding that the state provided a race-neutral explanation for the peremptory challenge.
Regarding prospective juror Bradley, the parties incorrectly state in their appellate briefs that the trial court upheld the state's peremptory challenge on the grounds of his purported son's prosecution for issuing worthless checks and Bradley's non-support cases. The trial court explicitly rejected those grounds based on the limited information provided during voir dire. The peremptory challenge was upheld solely on the basis of the state's concerns about Bradley's responses (or lack thereof) to the issue of whether the right to bear arms could be forfeited in any circumstance.
The prosecutor's rationale was as follows:
Mr. Bradley, the first indication I had from him, he kind of wavered when I asked about the right to bear arms and whether you could do something to have that right taken away. He kind of, he didn't really acknowledge me. I looked specifically at him. He did not  finally after I asked him I think twice whether he thought that the law was correct in requiring that if you do certain, if you commit certain crimes that the right to bear arms is taken away, he finally said I'm a gun owner. He never did acknowledge [to] me whether or not he agreed with that law and since the defendant in this case is charged with possession of a firearm by a convicted felon *1253 in which that right is taken away from you, that was my first reason.
The lack of responsiveness to questions is a valid, race-neutral explanation. State v. Benton, 42,121 (La.App.2d Cir.6/20/07), 960 So.2d 1192. When asked if he agreed with the law prohibiting gun ownership for convicted felons, Bradley ultimately responded that he "agree[d] with it." However, he finished his answer by stating, "I'm a gun owner." Thus, one could argue that it was not clear from Bradley's response whether he was simply agreeing that there is a right to bear arms, or he was indicating that he could follow the law prohibiting convicted felons from possessing weapons. This uncertainty, coupled with Bradley's apparent failure to acknowledge the prosecutor in the first instance, is sufficient to support the trial court's finding that the state's explanation was race-neutral.
The defendant's brief also references the names of four other jurors who were included in the Batson hearing. With respect to Johnny Howard, Jr., Jacqueline Sampson and Lettie Rochelle, defendant acknowledges he did not object to the state's proffered reasons for the peremptory challenges of those individuals. Although defendant objected to the state's challenge of juror Levar Nelson, he does not argue this issue on appeal. Even if we were to consider the challenge of Nelson, the result would be the same. The state's proffered reason for challenging Nelson was the concern that he may not be fair and impartial because he wore a shirt depicting a rap singer and former gang member, who was murdered. Perceived hostility is a valid, race-neutral concern. Anderson, supra. Recognizing the deference given to the trial court in evaluating discriminatory intent in peremptory challenges, we cannot say the court was clearly wrong in finding that the state's explanation was race-neutral. The assignment of error lacks merit.
Error Patent
Defendant's final assignment of error is a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556.
Our review of the record reveals one error patent. LSA-R.S. 14:95.1(B) provides that whoever is found guilty of possession of a firearm by a convicted felon shall be imprisoned for not less than ten years at hard labor without benefits and "be fined not less than one thousand dollars nor more than five thousand dollars." In this case, the trial court imposed an illegally lenient sentence by failing to assess any fine. Pursuant to LSA-C.Cr.P. art. 882(A), an illegal sentence "may" be corrected at any time by the court that imposed the sentence or by an appellate court on review. However, as we recognized in State v. Griffin, 41,946 (La.App.2d Cir.5/2/07), 956 So.2d 199, this court is not required to take such action. The state has not objected to the error and defendant is not prejudiced in any way by the failure to impose the mandatory fine. Thus, considering the defendant's apparent indigent status, we decline to remand the case for correction of the sentence to include such a fine.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.