917 So.2d 658 (2005)
STATE of Louisiana, Appellee
v.
Darryl HEARD, Appellant.
No. 40,284-KA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*661 Larry English, Shreveport, for Appellant.
Walter E. May, Jr., District Attorney, Daniel W. Newell, Assistant District Attorney, for Appellee.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Third Judicial District Court, Parish of Claiborne, State of Louisiana. The defendant, Darryl Heard, was convicted of second degree murder, and sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence. La. R.S. 14:30.1. He now appeals, citing only errors in the jury voir dire. For the following reasons, his conviction and sentence are affirmed.

FACTS
On January 23, 2001, Brenda Dunn was stabbed to death in a vacant house very near the home of Heard's mother in Homer, Louisiana. Drops of Heard's blood were found near the victim's body and on the front porch of the house. Blood found on Heard's clothing was determined to be the victim's. Heard was arrested and charged with second degree murder. He was tried by a jury, found guilty as charged, and sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence.
In this appeal, Heard does not contest the sufficiency of the evidence at the trial. Instead, his sole assignment of error alleges that the state struck African-American jurors in the voir dire in violation of the equal protection clause of the United States Constitution and Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Accordingly, the facts will address primarily the voir dire.
The record shows that the prospective jurors were called in panels of 18 at a time.[1] Three panels were called during *662 the voir dire. After a subsequent panel was called, the state and Heard were able to exercise "strike backs" on prospective jurors. After a jury was preliminarily selected, Heard asserted a challenge pursuant to Batson, noting that all 12 of the state's peremptory challenges had been exercised against African-Americans. In a hearing outside the presence of the jury, the trial court found that although the state did not exclude all blacks that were called, the fact that all 12 of the persons peremptorily challenged by the state were African-Americans, resulted in a "facial pattern" of discrimination. The trial court required the state to explain the reasons for its peremptory challenges. After hearing the state's various explanations for the peremptory challenges, the trial court found that the state had articulated sufficient non-discriminatory reasons for the exclusion of these jurors. Heard's objection was noted for the record. After the trial court's ruling, the jury was sworn in. Ultimately, it was composed of seven white jurors and five African-American jurors.
As stated, the jury found Heard guilty of second degree murder, and he was sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence. This appeal ensued.

DISCUSSION
On appeal, Heard raises only one assignment of error. He maintains that the state exercised its peremptory challenges in a manner aimed to exclude prospective African-American jurors in violation of Batson. We disagree.
The United States Constitution prohibits the state from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson, supra. Louisiana law codifies the Batson ruling in La. C. Cr. P. art. 795, which provides, in pertinent part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
When a defendant makes a Batson challenge, claiming the state has used *663 peremptory challenges in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. State v. Juniors, 2003-2425 (La.06/29/05), 915 So.2d 291. If the defendant fails to make a prima facie case, then the challenge fails. If a prima facie case is established, the burden shifts to the state to come forward with a race-neutral explanation for its peremptory challenges. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson, supra; State v. Juniors, supra.
If the state tenders a race-neutral explanation, then the trial court must decide, in the final step of this three-part analysis, whether the defendant has established purposeful racial discrimination. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 1770-1771, 131 L.Ed.2d 834 (1995) (per curiam). To be facially valid, the prosecutor's explanation need not be persuasive or even plausible. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Hernandez v. New York, supra; State v. Juniors, supra; State v. White, 36,935 (La. App. 2d Cir.06/06/03), 850 So.2d 751, writ denied, 2003-2616 (La.05/14/04), 872 So.2d 510. The proper inquiry, in this, the final step of the Batson analysis, is whether the defendant's proof, when weighed against the prosecutor's proffered race-neutral explanations, is sufficient to persuade the trial court that discriminatory intent is present. State v. Juniors, supra.
The ultimate focus of the Batson inquiry is on the prosecutor's intent at the time of the strike. State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. In resolving the ultimate inquiry before it  whether the proffered race-neutral explanation should be believed  the trial court should examine all of the evidence available. State v. Juniors, supra. Patterns of strikes and other statements or actions by the prosecutor during voir dire are relevant and may support a finding of discriminatory intent. Id.
However, it is the trial court which is in a position to observe firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, supra. As a result, a trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, and the trial court's findings as to the existence (or non-existence) of purposeful discriminatory intent is entitled to great deference by reviewing courts. Hernandez v. New York, supra; State v. Juniors, supra.
In the present case, the trial court determined that because the state used all 12 of its peremptory challenges to exclude African-Americans from the jury, a prima facie case of discrimination was established. The Louisiana Supreme Court has recently stated that it is not convinced that the "numbers alone" establish a prima facie showing of discrimination. State v. Juniors, supra. But, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, supra, 111 S.Ct. at 1866; State v. Juniors, supra.
Accordingly, the correctness of the trial court's initial finding of a prima facie showing of discrimination is now moot. The only issue before this court is whether or not the trial court abused its great *664 discretion in denying Heard's Batson challenge to the state's peremptory challenges as to the particular prospective jurors. Each prospective juror will be individually addressed.
Nicholas Williams. The race-neutral reason offered by the state was that Williams was a cousin to two law enforcement officers, Anthony Smith, a witness in the case, and Vincent Smith, a member of the Homer Police Department. Although the state noted that Williams would have made a good juror for the state because of his relationship to law enforcement officers, it expressed disbelief that Williams knew nothing of the crime after talking with his cousin who had dealt with the victim's body. Heard argued Williams had stated that he would be impartial, and that the question of whether or not he would have talked to his cousins was very subjective. However, the state can properly exercise a peremptory challenge for such disclosed connections to the case, when it "obviously perceived the disclosed connections could consciously or unconsciously affect the jurors' deliberations, and he was entitled to strike the jurors on that ground alone." State v. Juniors, supra. Heard's arguments as to this prospective juror show no discriminatory intent by the state and have no merit.
Dorothy Willis. The state's explanation for striking Willis was that she had a child support case with the state and seemed unhappy with the way the state had performed. Heard argued at trial that the state's use of the question concerning child support as a basis for peremptory challenges was a "loaded" question intended to eliminate African-American females from the jury, because more likely "... than not most of the women with child-support cases would be black." Nothing in the record supports this argument. To the contrary, a review of the questionnaires shows a majority of the African-American women answered that they were not receiving any type of governmental assistance.
As to Willis, it seems she was dissatisfied with how her child support case had been handled by the state. The following exchange took place:
MR. NEWELL: Okay. Ms. Willis, you have a child support case with the State, is that correct?
PROSPECTIVE JUROR WILLIS: Yes.
MR. NEWELL: Are you satisfied with the way the State is handling it?
PROSPECTIVE JUROR WILLIS: (Inaudible response)
THE COURT: We can't hear you.
PROSPECTIVE JUROR WILLIS: (Inaudible response)
MR. NEWELL: That's okay.
THE COURT: Wait, we didn't hear her answer.
MR. NEWELL: It was kind of an indifferent answer, wasn't it?
THE COURT: Okay.
PROSPECTIVE JUROR WILLIS: Yes.
In light of the fact that Willis was unable to even answer the state's questions regarding her child support case, the trial court did not abuse its discretion in finding the state's reason to be race-neutral for peremptorily excusing her from the jury. Heard's argument as to this prospective juror is without merit.
Mildred Scott. The race-neutral reasons given for excusing Scott was that she was over the age of 70, and the state did not think she would have understood the questions or the complexity of the case. Concern that a prospective juror may have difficulty in understanding legal concepts has been deemed to constitute a *665 race-neutral basis for exercising a peremptory challenge. State v. Juniors, supra. The mere fact that a prosecutor excuses one person with a particular characteristic and not another similarly situated person does not in itself show that the prosecutor's explanation was a mere pretext for discrimination. State v. Collier, 553 So.2d 815 (La.1989).
Larry Shine. The state claimed it peremptorily excused Shine because his questionnaire listed an "other than honorable discharge." A review of the jury questionnaires does not reflect any other prospective jurors with a dishonorable or less than honorable discharge from the military, and Heard fails to show how the state's action was not a race-neutral decision to exclude anyone that may have had a problem with authority in the military. The trial court did not err in its determination that this reason did not have a discriminatory intent.
Howard Olds. The state gave two race-neutral reasons for peremptorily excusing Olds. First, the state noted Olds' prior conviction for possession of marijuana. Heard argues that such a reason is not race-neutral, because the most likely person to have a criminal conviction is a black male (which reasoning is racist itself). Furthermore, Heard's argument is not supported by the jury questionnaires, which show that none of the other African-American males had criminal convictions. Prior criminal history has long been considered a valid reason to peremptorily excuse a prospective juror. See State v. Baker, 34,973 (La.App. 2d Cir.09/26/01), 796 So.2d 145. Additionally, a review of the record and the jury questionnaires does not show the state selected any white jurors with a criminal history beyond traffic offenses.
The second race-neutral reason offered by the state for excusing Olds was that he lived near Heard's mother. Notably, the murder victim's body was found near his mother's home. The concern that a prospective juror living near a defendant or a defendant's family may consciously or unconsciously affect his deliberations, is a valid reason for excluding him from jury duty. See State v. Juniors, supra.
Ken West. The state argued that West made absolutely no eye contact with the prosecutor or the defense counsel when questioned. Further, the state noted that West did not fill out the back of his questionnaire, and it was questionable whether West would be able to follow instructions. Although there is no indication on the record to indicate whether or not West was or was not making eye contact with the attorneys while being questioned, the trial court, which was present and observed the demeanor of West during questioning, sustained the state's peremptory challenge. Furthermore, when accepted by the trial judge, the exercise of a peremptory challenge based upon a prospective juror's body language does not violate Batson. State v. Hoffman, XXXX-XXXX (La.04/11/00), 768 So.2d 542, 559, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). Failure to make eye contact would fall within the realm of "body language," and Heard has failed to show how the trial court abused its great discretion in agreeing with the state as to West's demeanor.
In addition, a review of the questionnaires shows that West and another African-American, Ada Kilgore, were the only two prospective jurors who did not answer any of the questions on the back of their questionnaire. The first page of the questionnaire states, "YOU ARE ORDERED TO COMPLETE BOTH SIDES OF THIS QUESTIONNAIRE ...." (underline emphasis *666 in the original). Considering the fact that only two prospective jurors failed to answer the back of their questionnaires, and the state peremptorily excused both for concern that this indicated they could not follow instructions (and, incidentally, Heard agreed as to the excusing of Kilgore), Heard has failed to show how excluding prospective jurors that could not complete the jury questionnaire showed discriminatory intent.
Rachael Robinson. The state noted its reasons for excusing Robinson were that she had a charge for issuing a worthless check and the state was handling a child support case for her. It is not clear from the record if Robinson has a pending charge or a conviction. Irrespective, as discussed herein, the fact that Robinson had been a criminal defendant would be a sufficient basis for a peremptory exception in a criminal case. State v. Baker, supra.
Ada Kilgore. The record reflects that Heard agreed with the state's peremptory challenge of Kilgore. As noted above, Kilgore was only one of two prospective jurors who was unable to complete the back of the questionnaire.
Ray Jiles. The district attorney articulated two race-neutral reasons for excluding Rev. Jiles, the first of which was concern that a pastor of a large area church may feel pressure from his congregation not to convict Heard. The Louisiana Supreme Court has recently held that a prosecutor's concern that a prospective juror's occupation might result in him being more compassionate to a defendant was a sufficient race-neutral reason for a peremptory challenge. State v. Juniors, supra. The record does not reflect that the state accepted any white pastors, while rejecting Rev. Jiles. In addition, the district attorney informed the trial court that he was representing Rev. Jiles's niece in a custody matter. The trial court correctly accepted the state's reason for excluding Rev. Jiles as race-neutral.
Carnell Gilbert. The state stated that Gilbert was peremptorily excused for making contradictory statements. In her questionnaire, Gilbert stated that she did not want to serve on the jury because of health problems. However, during voir dire, she stated that she did want to serve. Indecisiveness is a valid race-neutral reason for excluding a potential juror from a jury. See State v. Parker, 04-1017 (La. App. 5th Cir.03/29/05), 901 So.2d 513. The trial court did not err on this determination.
Shuronda Hampton. The state explained that it excused Hampton because of her state child support case (which reason we discussed previously herein), and the fact that her fiancé was in jail. The fact that a prospective juror has a close family member imprisoned and is being prosecuted by the state is a sufficient basis for peremptorily excusing this prospective juror. See State v. Manning, XXXX-XXXX (La.10/19/04), 885 So.2d 1044, cert. denied, ___ U.S. ___, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
Kathy Dawson. As to Dawson, the state offered two race-neutral reasons for excusing her from the jury. First, the state noted that Dawson had a state child support case. As we noted previously, this reason did not show any discriminatory intent by the state. Although Dawson did not display the same ambivalence over her case as Willis, it is certainly plausible she might harbor dissatisfaction toward the state over the handling of her case, perceived or not. Again, the state offered a valid race-neutral reason.
The state also argued that Dawson lived next door to Heard's sister. Although *667 Dawson stated that proximity to Heard's family would not present a problem, the trial court properly concluded that the state offered a race-neutral reason for excluding her from the jury. See State v. Juniors, supra. Notably, Heard has not pointed to any other prospective white juror living close to him or his family who was accepted by the state.
Thus, considering the record as a whole, including the juror questionnaires and the reasons offered by the state for the exclusions, the trial court did not abuse its great discretion in finding that the state had provided race-neutral explanations for its peremptory challenges of the 12 African-American prospective jurors. The record reflects that the trial court paid close attention to the responses of each potential juror during voir dire and carefully considered the responses of the state to Heard's Batson challenge. In view of the vast amount of discretion to be accorded to the findings of the trial court in assessing intent and judging credibility of the prospective jurors, the trial court did not err in accepting the reasons given by the state as being race-neutral and without discriminatory intent. Therefore, Heard's lone assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the sentence and conviction of Darryl Heard is affirmed.
AFFIRMED.
NOTES
[1] This review is complicated by the fact that the record, as designated by Heard's appeal counsel and lodged with this court, did not contain any documentation regarding the jury selection. By order of the court, the record has been supplemented with the jury questionnaires and challenge sheets.