BROWN, Chief Judge.
 

 | defendant, Fred D. Kidd, Sr., was charged with the attempted second degree murder of his girlfriend, Elizabeth Rayetta Robinson, violations of La. R.S. 14:27 and La. R.S. 14:30.1(1). Defendant shot Ms. Robinson at close range in the abdomen with a .357 caliber Magnum revolver just after 1:00 a.m. on May 12, 2006. Trial began on July 7, 2008. After being notified that the jury was deadlocked 9 to 3, the trial court declared a mistrial. A second trial began on June 22, 2009. The jury found defendant guilty of attempted second degree murder. Thereafter, on September 9, 2009, the court sentenced defendant to 18 years at hard labor without the benefit of parole. This appeal followed. We affirm.
 

 Discussion
 

 Sufficiency of the Evidence
 

 At trial, defendant’s attorney asserted that the shooting was justified, that is, in self-defense. Thus, something must be said about the protagonists, the location and time of the shooting, and the evidence of what occurred that particular night.
 

 The Protagonists
 

 Defendant, Fred D. Kidd, Sr., and Elizabeth Robinson had been involved in a tumultuous, on-again, off-again relationship for over seven years. Defendant at the time of the shooting was 54 years old, stood 6' 2" and weighed 210 pounds. Ms. Robinson testified that, at the time of the shooting, she was 44 years old, stood 5' 11" and weighed 220 pounds. We note, however, that Ms. Robinson’s medical records of that night showed her weight to be 233 pounds. Obviously, both were heavyweights.
 

 | ^According to much of the testimony at trial, the two fought frequently. Ms. Robinson testified to defendant’s physical abuse against her. Other witnesses testified to Ms. Robinson’s abuse of defendant and in particular, to two confrontations that occurred within three months of the shooting.
 

 In March 2006, Ms. Robinson came uninvited to the Matador Ball and called defendant to come outside where she tore off his bow tie and soiled his shirt. A security officer at the Ball testified that he required Ms. Robinson to leave. In April 2006, Ms. Robinson went to a bar where defendant was drinking and pointed a handgun in his face. Thereafter defendant sought a restraining order against her; however, this action was dropped before the shooting. Ms. Robinson admitted both incidents but justified this aberrant behavior by stating that defendant had beaten her prior to his leaving to go to the Ball in March 2006 and the bar one month later.
 

 The Time and Location
 

 Defendant’s house was located at the corner of Pine and 10th Streets in Monroe, Louisiana. A 911 call was received at 1:18 a.m. on May 12, 2006, concerning an alleged drive-by shooting outside of defendant’s house. The house sits off the ground on piers. On the 10th Street side,
 
 *94
 
 a door opens onto a porch enclosed with waist-high railing looking down onto 10th Street. There was no.yard, just the shoulder of the street. Ms. Robinson, who was standing on the shoulder of the street, was shot in the stomach by defendant, who was standing above her on the porch.
 

 [
 
 3The Evidence
 

 Significantly, the only testimony concerning what occurred the night of the shooting was from Ms. Robinson.
 

 Ms. Robinson testified that she got off work at approximately 11:00 p.m. on May 11, 2006, and went home. After she had gone to bed, she returned a phone call from Jacqueline Kidd, defendant’s daughter. Jacqueline told Ms. Robinson that she heard some gunshots fired off near her father’s house. This was confirmed by Jacqueline Kidd’s testimony and the phone records. Then defendant phoned Ms. Robinson at 12:52 a.m. and asked her to come to his house because her nephew was there. Caller ID records confirmed the call and time. Ms. Robinson went to defendant’s house, but parked down the street. She testified that she was uneasy about the situation because the lights were not on at defendant’s house and because of what Jacqueline Kidd had said about gunshots being fired.
 

 Ms. Robinson stated that she went to the door and rang the doorbell. Defendant came out onto the porch. He asked her why she was treating him badly. [We will revisit this statement later under “motive.”] After realizing that her nephew was not there, she left, telling defendant that she was not going to argue with him. Ms. Robinson then walked off the porch and heard defendant go back inside. She then heard him return to the porch. He called her name three times. After the third time, Ms. Robinson turned around and defendant shot her in the abdomen. When he shot her, she fell face down onto the street. Defendant approached her and put the gun to the back of her head. Defendant left and Ms. Robinson heard him up on the |4porch talking to a 911 operator on the phone. At this time, Ms. Robinson identified defendant’s voice on the 911 tape, which was played for the jury. The caller on the 911 recording stated that there had been a drive-by shooting.
 

 After placing the call, defendant went back over to Ms. Robinson, turned her over, and looked at her gunshot wound. In the ambulance an officer asked Ms. Robinson if she knew the people in the maroon car who had shot her, and Ms. Robinson confided to the officer that defendant had shot her. Ms. Robinson testified that when she was lying in the street, defendant asked her to tell the police that she had been shot during a drive-by shooting.
 

 A bullet was recovered from Ms. Robinson’s body and was determined to have been fired from the .357 caliber gun which was recovered from defendant’s home. Police officers testified that no weapon was found on Ms. Robinson or from the area where she was shot. The officers also found a half-empty bottle of Crown Royal inside defendant’s house, and one officer testified that defendant smelled of alcohol.
 

 The only witness presented by the defense who had any knowledge about the actual shooting was Canary Henderson, who lived across the street from defendant at the time of the shooting. Ms. Henderson testified that she was sitting on her porch stairs that night (that is, at 1:00 a.m.). She saw defendant come out onto his porch, and he was talking to someone. Ms. Henderson could not identify that person nor could she hear what was said. Even though Ms. Henderson was looking at the back of the other | ..¡person, she said she saw the other person reach under
 
 *95
 
 his/her shirt. Ms. Henderson heard a gunshot and ran into her house. She did not report this to the police but told defendant a month later. Ms. Henderson was impeached by her prior inconsistent testimony at defendant’s first trial. Moreover, the State elicited rebuttal testimony from Thomas Jones, an investigator with the District Attorney’s Office, who stated that he put himself in the same situation as Ms. Henderson and it would have been extremely difficult, if not impossible, for Ms. Henderson to have viewed the interaction between defendant and Ms. Robinson on the night of the shooting.
 

 Motive
 

 After requesting that Ms. Robinson come to his house, defendant asked why she was treating him badly. Shortly before the shooting, Ms. Robinson had contacted an attorney who was representing defendant’s employer in a workers’ compensation suit filed by defendant. Ms. Robinson promised to testify that defendant had not injured himself on the job, but at home, and had fraudulently filed his claim for workers’ compensation benefits. The employer subsequently subpoenaed Ms. Robinson for a hearing on May 15, 2006. Defendant was mailed a copy of the subpoena. On May 12, 2006, three days before the compensation hearing was scheduled to take place, defendant called Ms. Robinson and asked her to come to his house. When Ms. Robinson refused to talk to him and was leaving, he shot her. We note that defendant’s attorney in the compensation | ficase testified that Ms. Robinson wanted money. When none was paid, she contacted the employer’s attorneys.
 

 Other Crimes Evidence
 

 On June 11, 2009, the State filed both a notice of its intention to use other crimes evidence and a motion for a
 
 Prieur
 
 hearing. The
 
 Prieur
 
 hearing was held on June 22, 2009, before jury selection. The State called Elizabeth Rayetta Robinson, the victim, to testify. Ms. Robinson testified that she and defendant were involved in a romantic relationship. She testified about a number of violent incidents wherein defendant would beat her and sometimes threaten her with a gun. She also testified to having threatened defendant with a gun and to a physical attack against defendant.
 

 The trial court held that the evidence was admissible, finding that the State had proven by a preponderance of the evidence that the events had occurred, and that the prior acts were similar to the allegations in the instant charge. The trial court also held that the evidence was not unduly prejudicial and therefore admissible, as defendant would use self-defense as a justification for the shooting. Ms. Robinson testified the same at the trial.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). In the absence of internal 17contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La.App.2d Cir.05/09/07), 956 So.2d 769;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/09/06), 941 So.2d 35. The appellate court does not assess the credibility of witnesses or reweigh evidence and accords great deference to a jury’s decision to accept or reject the testimony of a witness in
 
 *96
 
 whole or in part.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 La. R.S. 14:27(A) defines attempt as:
 

 A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 La. R.S. 14:30.1(A)(1) provides that second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. However, to be guilty of an attempt, the offender must necessarily have intended to kill.
 

 Intoxication is an affirmative defense; the burden of proof by a preponderance of the evidence rests upon defendant.
 
 State v. Hall,
 
 43,920 (La.App.2d Cir.02/25/09), 4 So.3d 295. If a defendant proves he was intoxicated at the time of the offense, the state has the burden of negating the defense by proof beyond a reasonable doubt.
 
 Id.
 
 A reviewing court accords great deference to a jury’s decision to accept or reject the testimony |sof a witness in whole or in part as to issues regarding the question of intoxication.
 
 Id.
 

 The record of this matter contains sufficient support for the jury’s verdict. The State elicited the testimony of the victim, Ms. Robinson, who identified defendant as the shooter. Ms. Robinson recounted for the jury the extensive history of domestic violence inflicted both on her by defendant and by her on defendant. She also testified that she had not provoked defendant the night of the shooting, but was attempting to leave his residence when he called her name, waited for her to turn around, and shot her in the abdomen. Defendant then lied to police, telling them that Ms. Robinson was shot during a drive-by shooting. Ms. Robinson’s uncontradicted testimony alone is sufficient to prove the commission of the offense by defendant.
 
 State v. Wiltcher, supra; State v. Burd, supra.
 

 Additionally, because it was undisputed that defendant actually shot Ms. Robinson, the defense attempted to show that the shooting was justifiable, i.e., that defendant was acting in self-defense. As stated, there was no evidence that defendant, who asked Ms. Robinson to come to his house, was in fear of her. There was no evidence that Ms. Robinson threatened defendant. The issue is what occurred at the time of the shooting. The State proved its case, which included that the shooting was not in self-defense.
 

 Defendant also failed to prove by a preponderance of evidence the affirmative defense of intoxication. The only testimony relating to defendant’s physical condition was that of Detective Napier, who stated that lflwhile defendant smelled of alcohol, he did not appear intoxicated. Based on the foregoing, a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty of attempted second degree murder.
 

 Evidentiary Rulings
 

 Generally speaking, evidence of a defendant’s other crimes, wrongs or bad acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove defendant’s character, and thus his subsequent disposition to break the law. La. C.E. art. 404(B);
 
 State v. Reed,
 
 43,780 (La.App.2d. Cir.12/03/08), 1 So.3d 561. However, Article 404(B) provides an ex
 
 *97
 
 ception to this general rule, allowing the admission of evidence of other crimes or wrongs as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
 
 Id.
 

 The state must give pretrial notice of its intention to use other crimes evidence in order to comply with due process.
 
 State v. Prieur, supra; State v. Reed, supra.
 
 The state must establish that the accused committed the prior bad acts by a preponderance of the evidence.
 
 State v. Reed, supra.
 
 The erroneous admission of other crimes evidence is subject to harmless error review.
 
 Id.
 
 Additionally, a trial court’s decision regarding the admissibility of other crimes evidence will not be overturned in the absence of a clear abuse of discretion.
 
 Id.
 

 The trial court did not err in admitting evidence of the prior acts of violence by defendant against Ms. Robinson. We first note that the defense 110did timely object to the introduction of this evidence by making a general objection to the trial court’s ruling at end of the
 
 Prieur
 
 hearing. La. C. Cr. P. art. 841.
 

 Ms. Robinson testified at the
 
 Prieur
 
 hearing about each of the specific instances wherein she suffered domestic violence at the hands of defendant. This testimony was uncontradicted; therefore, the trial court correctly ruled that the State had met its burden of proving by a preponderance of the evidence that defendant committed the prior bad acts.
 

 Furthermore, the evidence was relevant for purposes other than to depict defendant as having a bad character. As held by the trial court, the prior bad acts were similar to the instant crime. Ms. Robinson testified that on many of the prior occasions defendant would hold a gun to her and beat her. Therefore, because defendant asserted that he shot Ms. Robinson in self-defense, the evidence was relevant to prove motive, intent and absence of mistake. We also note that defendant put forth evidence of Ms. Robinson’s prior bad acts.
 
 See
 
 La. C.E. art. 404(A)(2). From all of this the jury could conclude that both parties acted badly. We find no error in the trial court’s determination that the probative value of this evidence outweighed its prejudicial effect. The trial court’s ruling allowing evidence of the pri- or bad acts of both defendant and victim was proper.
 

 Defendant claims that the trial court erred when it sustained the State’s objection as to the relevancy of evidence that Ms. Robinson reported domestic violence committed by her ex-husband. According to defendant, this evidence was relevant to rebut a trait established by the State, i.e., that InRobinson.did not report acts of violence committed against her by persons with whom she was in love.
 

 Defendant also alleges that the trial court erred in refusing to allow testimony by Jacqueline Kidd, defendant’s daughter, about phone conversations between her and Ms. Robinson. Defendant contends that the substance of these conversations was offered at trial to impeach Ms. Robinson’s earlier testimony that she did not call anyone after the Matador’s Ball to talk about what had occurred between her and defendant.
 

 A trial court’s determination regarding the relevancy of evidence is entitled to great weight and will not be overturned on appeal absent a clear abuse of discretion.
 
 State v. Jordan,
 
 31,568 (La.App.2d Cir.02/24/99), 728 So.2d 954,
 
 writ denied,
 
 99-0893 (La.10/08/99), 750 So.2d 177.
 

 Generally, evidence of a person’s character, or character trait, is not admissible to prove that the person acted in conformity therewith. However, La. C.E. 404(A)(2)
 
 *98
 
 makes an exception when the accused seeks to offer evidence of a character trait of the victim. So long as the character evidence does not concern the dangerous character of the victim (which requires a further showing), the accused may offer evidence that a victim has a certain character trait in an effort to show that the victim acted in conformity with that trait.
 
 See,
 
 e.g., Frank Maraist, 19 Louisiana Civil Law Treatise, Evidence and Proof, § 5.2 (2d Ed.2007).
 

 The trial court should have allowed limited questioning of the victim regarding any previous report she may have made about domestic violence suffered at the hands of her ex-husband. Defendant offered this evidence in |12an effort to discredit the victim’s testimony that she would not report domestic violence committed by someone she loved. This was a “pertinent” trait of the victim’s character because of the extensive evidence of a pattern of domestic abuse between defendant and the victim. Defendant was trying to diminish the proof that he had, prior to the shooting, committed violence against the victim, and, perhaps more importantly, he was trying to prove that the victim was not a credible witness.
 

 However, any error in this regard was surely harmless beyond a reasonable doubt. The jury heard abundant evidence from numerous witnesses regarding the volatile and abusive behavior of both Ms. Robinson and defendant. The evidence of the victim’s response to the violence by defendant was, likewise, fully presented to the jury, and the jury was free to judge the victim’s credibility based on this abundance of evidence. Further, the record does not make clear that the victim actually had a habit of calling the police on her ex-husband; defendant did not proffer evidence to that effect. The verdict in this case was surely unattributable to any error by the trial court on this issue.
 

 Jury Selection
 

 Defendant claims that he was denied a fair trial from a jury of his peers because the State improperly used peremptory strike backs to remove potential African-American jurors, specifically Gabrielle Elmore and Dennis Wasson, to create an all-white jury.
 

 The State first points out that defendant, a black male, was tried and convicted by a jury composed of seven white females, two black females | wand three white males. This jury was seated from a jury pool which had only eight prospective black jurors in three jury panels. Furthermore, the trial court did not err in finding that the State had adequate nondiscriminatory reasons for striking both Elmore and Wasson.
 

 The United States Constitution prohibits the state from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges.
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986);
 
 State v. Heard,
 
 40,284 (La.App.2d Cir.12/14/05), 917 So.2d 658,
 
 writs denied,
 
 06-0188 (La.06/16/06), 929 So.2d 1285 and 06-0781 (La.10/06/06), 938 So.2d 71. When a defendant makes a
 
 Batson
 
 challenge, claiming that the state has used peremptory strikes in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror’s race.
 
 Id.
 
 If the defendant fails to make a prima facie case, the challenge fails. If a prima facie case is established, the burden shifts to the state to come forward with a race-neutral explanation for its peremptory challenges.
 
 Hernandez v. New York,
 
 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991);
 
 Batson, supra; State v. Heard, supra.
 

 
 *99
 
 If the state tenders a race-neutral reason, then the trial court must decide, in the final step of this three-part analysis, whether defendant has established purposeful discrimination.
 
 Purkett v. Elem,
 
 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam);
 
 State v. Heard, supra.
 

 1 MThe trial court seemingly accepted that the defense had established a prima facie showing that the prosecutor exercised peremptory challenges on the basis of the jurors’ race simply because the State used two peremptory challenges to strike two African-American jurors. The State then came forward with a race-neutral reason for each strike. The prosecutor related that a peremptory challenge was used to strike Dennis Wasson because he was related to one of the defense witnesses and had read about the case in the newspaper. As for Gabrielle Elmore, the State pointed out that the jury had already been filled before Ms. Elmore would have been seated. Nonetheless, the prosecutor explained that they excluded her by peremptory challenge because, as a nursing student, Ms. Elmore had upcoming final exams and admitted that she would have trouble focusing on a trial. Ms. Elmore also had a cousin serving time in California for murder and knew the daughter of one of the defense witnesses. The trial court accepted the race-neutral explanations and denied Kidd’s
 
 Batson
 
 challenge. The procedure utilized by the trial court complies with the mandates of
 
 Batson,
 
 and we find no error on the part of the trial court in its ruling.
 

 This assignment therefore has no merit.
 
 Excessive Sentence
 

 According to defendant, his 18-year sentence is excessive because he has no prior criminal record, has two brothers and five sisters, raised his children as a single father and was a good neighbor and father. Further, the defense contends that Ms. Robinson played a major part in making their relationship a violent one.
 

 |1SA sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive.
 
 State v. Shorts,
 
 42,854 (La.App.2d Cir.12/19/07), 973 So.2d 894.
 

 The record of this matter reveals that the trial court addressed and considered several of the factors expressed in La. C. Cr. P. art. 894.1, including, specifically, the fact that defendant had no prior criminal history, that he used a dangerous weapon in the commission of the offense, the fact that impact of the offense on the victim was significant, and the fact that defendant attempted to cover up his crime by illegally reporting the crime as a drive-by shooting. The trial court sentenced defendant to 18 years at hard labor without the benefit of parole. Under La. R.S. 14:27(D)(1)(a), his possible exposure was anywhere from 10 to 50 years at hard labor without benefits. Defendant’s sentence of 18 years is well below the maximum sentence that could have been imposed. We cannot say that this sentence is excessive by constitutional standards.
 

 This assignment therefore has no merit.
 

 Conclusion
 

 For the foregoing reasons, defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.