BROWN, Chief Judge.
hOn January 27, 2011, defendant, Charles Wynne, Jr., was charged by bill of information with operation of a clandestine methamphetamine laboratory, a violation of La. R.S. 40:983, and simple arson, a violation of La. R.S. 14:52(A)(2) and 14:52(B). On August 17, 2011, a jury found defendant guilty as charged. On September 26, 2011, defendant was sentenced to ten years at hard labor on the meth lab charge and to five years at hard labor on the simple arson charge, with the sentehces to run concurrently.[1] The trial court also recommended mental health treatment. Defendant has appealed his sentences as excessive. We affirm defendant’s convictions and sentences.

Facts

On August 16, 2011, following jury selection, defendant’s jury trial commenced *866 with the testimony of Fire Chief David Camp of the Springhill Fire Department. Camp stated that on the afternoon of November 20, 2010, the Springhill Fire Department responded to a house fire at the residence at 407 Sixth Street Northeast. The origin of the fire was determined to be in a back comer room of the house, where the following items were found among the debris: a five-gallon propane tank, a smaller propane tank, a fish cooker burner, three one-gallon cans (similar to cans of solvent), a camping stove, a fuel tank for the camping stove, a lantern, numerous bottles of propane gas, six batteries, an aluminum pot, a pair of pliers, sheet metal cutters, a chemistry book, several bundles of rubber or rubber tubing, the ^remains of a camp stool, and a five-gallon plastic jug. On cross-exam, Chief Camp testified that the fire, which had originally been contained, rekindled later that day. Due to the extent of the damage from the first fire, plus the explosion, he would not let anyone enter the structure to fight the fire from within. He testified that the house had no electricity or gas service at the time of the fire, and the destruction was total. He estimated the house to be valued at around $20,000.
Fire Captain Brian Montgomery, who also served as a Springhill Police Officer, identified each of those items as being parts or precursors of a methamphetamine lab. Trooper Brian Driskill, of the Louisiana State Police, an expert in the field of identification of methamphetamine labs and the manufacturing process for methamphetamine, testified that the items found in the home were used in the manufacturing of methamphetamine. He also tested the contents of the larger propane cylinder, which tested positive for anhydrous ammonia.
Trooper Driskill interviewed defendant and asked him what he used the propane bottle for, and defendant stated that he was living in the house which had no utilities or heat, so he was using it as a heat source. However, the propane cylinder contained anhydrous ammonia, which is not a fuel source for heat but is actually a farm fertilizer. When Trooper Driskill told defendant that, he insisted he had no idea how the anhydrous ammonia got into the tank, which he had bought from Wal-mart just two weeks prior.
Evidence was introduced that defendant had purchased products containing pseu-doephedrine approximately 16 times from pharmacies in the |3Sprmghili area during the period February 2010 through November 2010. On direct examination, Trooper Driskill testified that pseudoephedrine is the key ingredient in the manufacturing of methamphetamine. According to Trooper Driskill, the type of methamphetamine that defendant was manufacturing was by the “Nazi” or anhydrous ammonia method.
On direct examination, Jeffrey Broome, a driver for Advanced Emergency Medical Services, testified that he treated defendant at the scene for burns on November 20 and then transported him to the hospital that same day. Defendant admitted to using speed (methamphetamine) within 48 hours prior to the fire. In addition, David Boudreaux, a narcotics officer with the FBI Violent Crimes Task Force, also testified that he spoke to defendant in December 2010 as part of the investigation and defendant admitted to using methamphetamine approximately 48 hours before the fire. Defendant also told him he was using the propane to keep warm because there was no heat in the house at the time.
As a witness for the defense, Mike Out-lander testified that defendant had connected the fish cooker to a propane tank and used it as a source of heat. Additionally, Chad Watts testified that there were *867 no utilities in the home and that defendant used the fish cooker to warm up the house.
The jury found defendant guilty on both charges and a pre-sentence investigation report was ordered. On September 26, 2011, defendant was sentenced to imprisonment at hard labor for ten years on the methamphetamine laboratory charge and five years at hard labor on the arson charge, with the sentences to run concurrently.
|4Specifically, the court stated:
The Court has considered Article 894.1 of the Code of Criminal Procedure and finds that you are in need of correctional treatment that can be provided most effectively by your commitment to an institution. A lesser sentence would deprecate the seriousness of your crimes. Your criminal conduct certainly caused and threatened serious harm ... They were no grounds which would excuse or justify your criminal conduct ... The Court believes your conduct was the result of circumstances which are likely to recur.
The court also recommended that defendant receive mental health treatment while incarcerated and ordered that he be given credit for time served. Additionally, the court advised defendant that he had two years to file for post-conviction relief and 30 days to appeal the sentence. On October 6, 2011, defense counsel filed a motion to reconsider sentence as excessive. This motion was denied on March 5,2012.

Discussion

Excessive Sentence

According to defendant, his concurrent sentences of ten years at hard labor for operating a methamphetamine laboratory and five years at hard labor for simple arson are excessive. Defendant urges that the trial court only considered his prior criminal history and did not consider:
(1) his age of 45 at the time of the incident; (2) that he is not the worst of offenders; (3) that drug abuse was the source of this criminal activity given that he had used methamphetamine within 48 hours of the fire; and (4) that this was not a crime of violence. It is defendant’s position that the goals of punishment and rehabilitation, the interests of society, and the costs of incarceration can be accomplished by less severe sentences.
IfiOn the other hand, the state asserts that the sentences are not excessive and notes the court’s reasons for imposing the particular sentences. The state also emphasizes defendant’s criminal history, his lack of remorse for his actions despite the overwhelming evidence presented against him, and his status as a third-felony offender.
La. R.S. 40:983 provides:
(A) Creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance is any of the following:
(1) The purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance.
(2) The transportation or arranging for the transportation of any material, compound, mixture, preparation, supplies, or equipment with the intent that such material, compound, mixture, preparation, supplies, or equipment be used for the unlawful manufacture of a controlled dangerous substance.
(3) The distribution of any material, compound, mixture, preparation, equipment, supplies, or products, which material, compound, mixture, *868 preparation, equipment, supplies, or products have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.
(4) The disposal of any material, compound, mixture, preparation, equipment, supplies, products, or byproducts, which material, compound, mixture, preparation, equipment, supplies, products, or byproducts have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.
(B) It shall be unlawful for any person to knowingly or intentionally create or operate a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance.
I b(C) Whoever commits the crime of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance shall be sentenced to imprisonment at hard labor for not less than five years nor more than fifteen years; and may, in addition, be sentenced to pay a fine of not more than twenty-five thousand dollars.
La. R.S. 14:52 provides:
(A) Simple arson is either of the following:
(1) The intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51.
(2) The starting of a fire or causing an explosion while the offender is engaged in the perpetration or attempted perpetration of another felony offense even though the offender does not have the intent to start a fire or cause an explosion.
(B) Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.
A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir.11/03/10), 55 So.3d 90.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.02/28/96), 669 So.2d 667, writ denied, 96-0836 (La.09/20/96), 679 So.2d 430. Absent a showing of 17manifest abuse of discretion, a sentence will not be set aside as excessive. Id.
Although it is not required to list every aggravating or mitigating circumstance, the court’s reasons show that it considered the guidelines of La. C. Cr. P. art. 894.1. Specifically, the court noted defendant’s extensive criminal history, the serious harm posed to defendant and to others by his conduct, how the conduct was a result of circumstances which were likely to recur, and how a lesser sentence would deprecate the seriousness of his crimes.
The maximum sentences for the crimes of conviction, operating a methamphetamine laboratory and simple arson, are fifteen years at hard labor and five years at hard labor respectively. Defendant was sentenced to concurrent terms of ten years on the meth lab count and five years on the arson count for a total sentence of ten years at hard labor. Given defendant’s prior criminal history and the danger *869 posed to himself and others with his action, there is no manifest abuse of the trial court’s discretion in this case. Defendant’s sentences are not grossly out of proportion to the seriousness of the offenses.

Conclusion

For the reasons set forth above, defendant’s convictions and sentences are affirmed.
Affirmed.

. At the sentencing hearing, the state filed a habitual offender bill of information charging defendant as a third felony offender. Defendant was arraigned on the habitual offender bill and pled not guilty.