STEWART, J.
|, The issue in this case is whether the state used its peremptory challenges to exclude African Americans from jury solely on the basis of their race in violation of the Equal Protection Clause of the Fourteenth Amendment, as interpreted in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Following a jury trial, the defendant, Donte Fielding, was convicted of second degree murder, a violation of La. R.S. 14:30.1. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The defendant now appeals. For the reasons discussed in this opinion, the defendant’s conviction and sentence are affirmed.
FACTS
On March 29, 2011, the defendant was charged by bill of indictment with first degree murder, in violation of La. R.S. 14:30, for the December 16, 2010, death of Brian G. “Butch” Bays. This indictment was later amended to a charge of second degree murder, in violation of La. R.S. 14:30.1, on July 11, 2011. On April 2, 2012, counsel for the defense filed a motion for change of venue, stating that the victim was a well-known elected official in Claiborne Parish and that they were concerned about the publicity surrounding the crime. After the April 12, 2012, hearing on the motion, the trial court transferred the case from Claiborne Parish to Bienville Parish.
On November 26, 2012, the trial began. During jury selection, the state used peremptory challenges to excuse five African American males and three African American females from the panel. Defense counsel used peremptory challenges to excuse four Caucasian males, one Caucasian female, and one African American female. Defense counsel objected to the state’s exercise of its peremptory challenges pursuant to Batson, supra, ^arguing that the state exercised its peremptory challenges to excuse jurors solely on the basis of their race. The trial court acknowledged that there was a systematic exclusion of African Americans by the state and ordered it to provide a race-neutral explanation for each of its peremptory challenges. After the state presented its race-neutral reasons for exercising its peremptory challenges, the trial court denied all of defense counsel’s Batson challenges.
On November 29, 2012, the jury, which was comprised of eight Caucasian males, two Caucasian females, one African American male, and one African American female,[1] unanimously found the defendant guilty of second degree murder. On January 8, 2013, defense counsel filed a motion for judgment of acquittal, asserting the evidence presented at trial was insufficient to find the defendant guilty of second degree murder. The motion was denied, and the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals, asserting one assignment of error.
LAW AND DISCUSSION

Batson Challenge

In the defendant’s sole assignment of error, he argues that the state improperly *1055 used its peremptory challenges to exclude prospective jurors on lathe basis of their race. More specifically, he asserts that the state used its eight peremptory challenges to excuse African Americans from the jury, and that the state’s discriminatory intent is apparent. He expresses that the state did not present comprehensible, persuasive, or plausible reasons for the exclusion of these prospective jurors from the jury.

Relevant Law

It is well settled that the use of peremptory challenges based solely on a juror’s race is prohibited. Batson, supra. The court in Batson held that an equal protection violation occurs when the prosecutor, in a case against a member of a cognizable racial group, exercises peremptory challenges to remove members of the defendant’s race from the jury venire for a discriminatory purpose. State v. Collier, 553 So.2d 815 (La.1989). The Batson decision is codified in our law in La. C. Cr. P. art. 795. In State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 588, the court set forth the proper reviewing process for a Batson claim as follows:
A defendant’s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, “[t]he second step of this process does not demand an explanation that is persuasive, or even plausible”; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating “the persuasiveness of the justification” proffered by the prosecutor, but “the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” (citations omitted.)

Prima Facie Case by the Defendant

|4To establish a prima facie case, the objecting party must show: (1) the striking party’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the venire person on account of his being a member of that cognizable group. If the trial court determines the opponent failed to establish the threshold requirement of a prima facie case (step one), then the analysis is at an end and the burden never shifts to the proponent of the strike to articulate neutral reasons (step two). State v. Nelson, 2010-1724 (La.3/13/12), 85 So.3d 21.
No formula exists for determining whether the defense has established a pri-ma facie case of purposeful racial discrimination. A trial judge may take into account not only whether a pattern of strikes against African American venire persons has emerged during voir dire, but also whether the prosecutor’s questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. State v. Jacobs, 1999-0991 (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). Batson accords a trial court considerable flexibility and broad discretion in this regard because “trial judges, experienced in supervising voir dire, will be able to decide if the circumstances con *1056 cerning the prosecutor’s use of peremptory challenges create a prima facie case of discrimination against [African American] jurors.” Batson, supra; Jacobs, supra.
|fiBare statistics alone are insufficient to support a prima facie case of discrimination. Furthermore, the value of numbers alone, without any indication of the race or gender composition of the jury selected or the pool from which it was drawn, is limited at best. State v. Roland, 2010-0325 (La.App. 4th Cir.4/18/11), 64 So.3d 330, writ granted, 2011-0974 (La.11/18/11), 125 So.3d 416, 2011 WL 6153193, cert. denied, — U.S. -, 132 S.Ct. 2682, 183 L.Ed.2d 48 (2012).

Rebuttal by the Prosecutor

Once the defendant makes a prima facie showing of purposeful discrimination, Bat-son shifts the burden to the prosecutor to come forward with a neutral explanation for challenging the African American jurors. Collier, supra. To rebut a prima facie showing of intentional discrimination, the proponent of a peremptory challenge must offer a race-neutral explanation. Batson, supra; State v. Nelson, supra. A neutral explanation means an explanation based on something other than the race of the juror. State v. Elie, 2005-1569 (La.7/10/96), 936 So.2d 791. The race-neutral explanation offered by the state must be one which is clear, reasonable, specific, legitimate, and related to the particular case at bar. State v. Jones, 42,531 (La.App.2d Cir.11/7/07), 968 So.2d 1247. This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be “partial to the defendant because of their shared race.” State v. Nelson, supra. At the second step of the Batson inquiry, the issue is the facial validity of the striking party’s explanation. Id. Unless a discriminatory |fiintent is inherent in the striking party’s explanation, the reason offered will be deemed race-neutral. Id.

Evaluation by the Trial Court

In the third step of the Batson analysis, the court must determine whether the objecting party has carried his burden of proving purposeful discrimination. Bat-son, supra; State v. Nelson, supra. After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Collier, supra; Tompkins v. Texas, 774 S.W.2d 195, 202 (Tx.Crim.App.1987), affd. without opinion by an equally divided court, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Batson, supra. The proper inquiry in this step is whether the defendant’s proof, when weighed against the prosecutor’s proffered race-neutral explanation, is sufficient to persuade the trial court that discriminatory intent is present. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006).
The trial court plays a unique role in the dynamics of voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, supra; State v. Jones, supra. Since the trial judge’s findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those | .findings great deference. Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991).

*1057
Voir Dire Proceedings

In the case sub judice, defense counsel raised a Batson challenge asserting that the state exercised eight of its 12 peremptory challenges to remove prospective African American jurors from the panel. Applying the three-part Batson test, the trial court determined that defense counsel had made a prima facie showing of racial discrimination by the state. The burden was then properly shifted to the state to present race-neutral explanations for striking those prospective jurors. The trial court accepted each of the state’s race-neutral explanations, denying the Batson challenges regarding the following prospective jurors:
1. Kemeakia McCarter
In providing its reasons for exercising a peremptory challenge against Ms. McCar-ter, the state explained that she had a child support case with the state, and that her boyfriend, Eric Boston, is a convicted felon. Noting that reasons provided were nondiscriminatory, the court denied the Batson challenge.
2. Steven Murphy
In providing its reasons for exercising a peremptory challenge against Mr. Murphy, the state explained that Mr. Murphy has a child support case with the state, and that his brother, Carlos Green, was previously convicted of distribution of a Schedule III CDS. Mr. Murphy stated that he had never had a child support case, and that he was unaware that Mr. Green “had trouble with the law.” Defense counsel objected, arguing that the reasons |Rfor exercising the peremptory challenge were pretextual because there is no active child support case against Mr. Murphy. Further, the state accepted a white male prospective juror, David Freeman, who admitted that he had a misdemeanor conviction. The court responded by stating that “it thought there is a big difference between misdemeanors and felonies,” that both of the state’s explanations were nondiscriminatory, and denied the Batson challenge.
3. John Morgan
In providing its reasons for exercising a peremptory challenge against Mr. Morgan, the state explained that he had several child support cases with the state, and that he stated that he was not satisfied with the way they were handled. Mr. Morgan also stated that he would be concerned about the evidence not presented in the instant case, and that he would want the state to call all of the witnesses to testify. The Batson challenge was denied, with the court finding the state had provided a valid nondiscriminatory reason.
4. Anthony Miles
In providing its reasons for exercising a peremptory challenge against Mr. Miles, the state explained that he had a herniated disk problem that would not permit him to sit for long periods of time in the courtroom. Additionally, he had a child support case pending, as well as numerous cases regarding the issuance of worthless checks with the state. Defense counsel argued that a Caucasian male prospective juror, Calvin Gildon, also suffered from disk problems, but the state did not excuse him. After a brief discussion, it was determined that the defense had in fact exercised a | ¿peremptory challenge against Mr. Gildon. After finding that the reasons provided were nondiscriminatory, the trial court denied the Batson challenge.
5. Laquetta Anderson
In providing its reasons for exercising a peremptory challenge against Ms. Anderson, the state explained that she had expressed that serving on the jury would *1058 be a hardship for her. Ms. Anderson, who is a professor at Grambling State University, stated that she was preparing her students to take final exams the following week. Defense counsel objected, arguing there were several prospective jurors whom the state did not challenge peremptorily and would suffer from hardships, namely, David Freeman. The state distinguished Ms. Anderson’s hardship from Mr. Freeman’s because he was only missing his vacation, while Ms. Anderson’s hardship impacted many students. Further, Ms. Anderson was the only prospective juror who stated that being selected to serve would cause a problem at her job. The court determined that the reason provided was nondiscriminatory, and denied the Batson challenge.
6. John Wright
In providing its reasons for exercising a peremptory challenge against Mr. Wright, the state explained that he sighed extremely loud when his name was initially called, and that he obviously “wasn’t too thrilled” about serving on the jury. Further, the state observed him sleeping on several occasions. The court accepted this explanation as a nondiscriminatory reason and denied the Batson challenge.
7. Rosie Wright
| min providing its reasons for exercising a peremptory challenge against Mrs. Wright, who is John Wright’s wife, the state explained that serving on the jury would be a hardship for her because she has to care for her elderly mother. Mrs. Wright’s mother is a diabetic on dialysis, and she had to check on her daily. She also indicated that it would be a hardship for her regarding her job. The state noted that there might also be a problem with her serving on the jury with her husband in the event there is a disagreement in the jury room. As with Ms. Anderson, the defense argued that Mrs. Wright’s service as a juror would be no more of a hardship for her than it would be for other prospective jurors. The court determined that the reasons provided were nondiscriminatory, and denied the Batson challenge.

8.Omar Smith

In providing its reasons for exercising a peremptory challenge against Mr. Smith, the state explained that he had expressed that it would be a hardship for him to serve on the jury because he has to take care of his sick mother. His mother needs care throughout the day, and Mr. Smith sits with her daily. He stated that nobody else is available to sit with her. The court determined that the reasons provided were nondiscriminatory, and denied the Batson challenge.

Discussion

In the present case involving an African American defendant and a Caucasian victim, the defendant’s prima facie showing raised an inference of discrimination. Therefore, the burden shifted to the prosecutor to express racially neutral reasons for challenging the prospective African American jurors.
|nAs we discussed in the previous section, the state offered various explanations for excusing the eight African Americans from the jury. Louisiana courts have found many explanations to qualify as race-neutral reasons. Prior criminal history has long been considered a valid reason to peremptorily excuse a prospective juror. State v. Heard, 40,284 (La.App.2d Cir.12/14/05), 917 So.2d 658, writ denied, 2006-0188 (La.6/16/06), 929 So.2d 1285; State v. Baker, 34,973 (La.App.2d Cir.9/26/01), 796 So.2d 145. Additionally, the fact that a family member is a convicted criminal is a racially-neutral reason for excluding a prospective juror. State v. *1059 Heard, supra; State v. Manning, 2003-1982 (La.10/19/04), 885 So.2d 1044, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
The existence of a child support case with the state has been held to be a valid race-neutral explanation for peremptorily challenging a prospective juror. State v. Heard, supra; State v. Dobbins, 28,975 (La.App.2d Cir.12/11/96), 685 So.2d 446.
Here, the state explained that Ms. McCarter was excused because she has a child support case with the state, and her boyfriend was a convicted felon. Mr. Murphy also had child support cases with the state, and his brother is a convicted felon. Mr. Morgan also had child support cases with the state, and expressed his disapproval with the way they were handled. He also voiced concern about the evidence that would be presented at trial, and stated that he wanted to call every available witness to testify. Mr. Miles previously had a child support case, and several cases involving the issuance of worthless checks. He also suffers from a herniated disk that prevents him |12from being able to sit for long periods of time. As we discussed previously, jurisprudence has found that the existence of a child support case or the prior criminal history of a prospective juror, or his family member, are found to be valid race-neutral reasons for excluding a prospective juror. See State v. Heard, supra; State v. Baker supra; State v. Manning, supra; State v. Dobbins, supra. Therefore, we find that the state provided adequate race-neutral reasons for excluding Ms. McCarter, Mr. Murphy, Mr. Morgan, and Mr. Miles.
When accepted by the trial judge, the exercise of a peremptory challenge based on a juror’s body language does not violate Batson. State v. Hoffman, 1998-3118 (La.4/11/00), 768 So.2d 542; State v. Heard, supra. Further, this court in State v. Davis, 48,161 (La.App.2d Cir.8/7/13),121 So.3d 1207, found that the state and trial court’s concern about a prospective juror’s inattentiveness and sleeping were reasons that were not inherently discriminatory and suffice as race-neutral reasons for the peremptory challenge. In this case, the state noted that it excused Mr. Wright because he sighed loudly when his name was called, and he did not appear too “thrilled” to serve on the jury. It also stated that it observed him sleeping during voir dire. Mr. Wright’s inattentiveness and act of sleeping are race-neutral reasons for the peremptory challenge. See State v. Hoffman, supra; State v. Heard, supra.
The state excused Ms. Anderson, Mrs. Wright, and Mr. Smith because they each expressed that serving on the jury would be a hardship for them. Ms. Anderson was in the process of preparing her students at Grambling State University for final exams, and both Mrs. Wright and Mr. |1sSmith had to care for their mothers. Defense counsel argued that their service as a juror would be no more of a hardship for them than it would be for other prospective jurors. However, the mere fact that a prosecutor excuses one person with a particular characteristic and not another similarly situated person does not in itself show that the prosecutor’s explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the prosecutor could have reasonably believed would make him desirable as a juror. State v. Collier; State v. Heard. Accordingly, the trial court did not err in denying the defendant’s Batson challenge with respect to Ms. Anderson, Mrs. Wright, and Mr. Smith.
After a careful review of the record, we find that the state provided sufficient race- *1060 neutral reasons for challenging the eight prospective jurors at issue. The trial court carefully observed each prospective juror’s response during voir dire, and adequately evaluated the state’s explanation for its peremptory challenges. The transcript of the voir dire proceeding is void of any inference of racial discrimination by the state in exercising their peremptory challenges. Therefore, the trial court did not abuse its discretion in denying the defense’s Batson challenges. This assignment of error has no merit.
CONCLUSION
We have found no merit in the defendant’s assignment of error, and accordingly, affirm his conviction and sentence.
AFFIRMED.

. A Caucasian female and an African American female were selected as alternate jurors.